# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
CONTAINER LEASING            :
INTERNATIONAL, LLC d/b/a     :
CARLISLE LEASING             :
INTERNATIONAL, LLC,          :
                             :
     Plaintiff,              :
                             :
v.                           :     Civil No. 3:03CV00101(AWT)
                             :
NAVICON, S.A. and TRANSPORTES :
FERROVIARIOS ESPECIALES,S.A. :
                             :
     Defendants.             :
------------------------------x
```

## RULING ON MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND TO DISMISS OR STAY ON GROUNDS OF INTERNATIONAL COMITY

Container Leasing International, LLC d/b/a Carlisle Leasing International, LLC ("Carlisle"), brings this action alleging that Transportes Ferroviarios Especiales, S.A. ("Transfesa") and its subsidiary, Navicon, S.A. ("Navicon"), breached a contract, entitling it to damages. Transfesa has moved to dismiss the complaint for lack of personal jurisdiction, and Navicon has moved to dismiss the complaint or, in the alternative, to stay the action on the grounds of international comity in light of a Spanish bankruptcy proceeding commenced by Navicon and the commencement of separate actions by Carlisle in Spain. For the reasons set forth below, both motions are being denied.

I.   **FACTUAL BACKGROUND**

Carlisle is a corporation organized and existing under the laws of the State of New York, with its principal place of business and offices located in Park Ridge, New Jersey, but previously located in Greenwich, Connecticut.  Transfesa is a corporation organized and existing under the laws of Spain, with its principal place of business and office located in Madrid, Spain.  Navicon is a corporation organized and existing under the laws of Spain, with its principal place of business and office located in Madrid, Spain.

On March 3, 1997, Carlisle and Navicon entered into a lease agreement pursuant to which Navicon agreed to lease certain specialized refrigerated containers from Carlisle.  Subsequently, Carlisle and Navicon executed four Addenda (Addenda NVCN001, NVCN002, NVCN003 and NVCN004, respectively) which became part of the March 3, 1997 lease agreement.  Pursuant to these Addenda, Navicon agreed to lease additional containers from Carlisle for the terms and at the fixed rates set forth in each of the Addenda.[1]  At the expiration of the lease periods or upon

---

[1] Addendum NVCN001 was formed on March 3, 1997 for Navicon's lease of 15 additional containers from Carlisle from April 1, 1997 until March 31, 2002, at fixed rates set forth in the Addendum. Addendum NVCN002 was formed on March 2, 1998 for Navicon's lease of 10 additional containers from Carlisle for the period from May 1, 1998 to April 30, 2001, at fixed rates set forth in the Addendum.  Addendum NVCN003 was formed on July 6, 1998 for the purpose of providing that all 25 containers previously leased by Navicon under Addenda NVCN001 and NVCN002 would become subject to the terms of Addendum NVCN003 " AS IS/WHERE IS".  Finally,

termination of the March 3, 1997 lease agreement or Addenda NVCN003 and/or NVCN004, Navicon was required to return the containers to Carlisle.

In late 2000, Navicon began defaulting on its contractual obligations to Carlisle by failing to make the required payments under the terms of the March 3, 1997 lease agreement and Addenda NVCN003 and NVCN004. Carlisle alleges that despite all its efforts to obtain full lease payments for the containers, Navicon persisted in failing to meet its financial obligations to Carlisle. Consequently, on February 26, 2001, Carlisle terminated all of Navicon's rights under the March 3, 1997 lease agreement and the Addenda, and it demanded that Navicon immediately return to Carlisle all containers in its possession. Carlisle also demanded that Navicon pay all amounts then due under the lease agreement and the Addenda.

On March 31, 2001, Navicon filed for a particular type of bankruptcy relief pursuant to the Suspension of Payments law of Spain. Carlisle contends that nothing in the Suspension of Payments proceeding ("Insolvency Proceeding") in Spain prevented either Navicon or Transfesa from returning the containers to Carlisle during the pendency of those proceedings. Nevertheless,

---

Addendum NVCN004 was formed on October 22, 1998, for Navicon's lease of 150 additional containers from Carlisle from February 1, 1999 to January 31, 2004, at fixed rates set forth in the Addendum.

Navicon and Transfesa failed to return the containers in Navicon's possession and also failed to remit to Carlisle the amounts due under the terms of the March 3, 1997 lease agreement and Addenda NVCN003 and NVCN004, and the indebtedness to Carlisle under those agreements continues to increase.  In the Insolvency Proceeding, Carlisle can only collect debts that Navicon incurred prior to the filing of its petition.  Therefore, Carlisle had to initiate separate actions outside the Insolvency Proceeding in order to protect its rights with respect to post-petition claims.

Carlisle alleges that, at all relevant times, Transfesa exercised complete dominion and control over the finances, policy and business practices and decisions of Navicon, such that Navicon was in reality Transfesa's *alter ego*.  Carlisle also alleges that after Navicon commenced its Insolvency Proceeding, Carlisle was approached by Transfesa, which attempted to lease or purchase containers directly from Carlisle.  Transfesa's representatives allegedly made two proposals to Carlisle, one to directly lease containers from Carlisle and the other to purchase its containers. Carlisle rejected Transfesa's proposals outright, because they were not economically feasible for Carlisle.  In response, Transfesa allegedly threatened Carlisle that it would not see the containers for years, because Transfesa would ensure that Carlisle became mired in the Insolvency Proceeding started by Navicon and that Carlisle would not get paid.

After Navicon commenced the Insolvency Proceeding, Carlisle filed two actions in Spain.  One was an action for a relief entitled "Exhibition," and it required Navicon to disclose the location of Carlisle's containers and permit inspection of them. The second was an action for relief in the form of an order directing Navicon to return the containers; in this second action, Carlisle also sought an additional type of relief called "fruits," which would result in the payment to Carlisle of monies earned by Navicon's subletting Carlisle's containers to third parties.  The Spanish court decided that such relief should be sought in the proper forum, which under the terms of the forum selection clause contained in the lease agreement, is the United States.

## II.  TRANSFESA'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2)

### A.  Legal Standard

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.  Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996), cert denied, 519 U.S. 1006 (1997).  Where a defendant challenges "only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196 (2d

Cir. 1990).  "When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials . . . the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." See Transport, Wiking, Trader, Schiffanhtsgesellschaft, MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993)(quoting Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990)(per curiam)(citations omitted), cert. denied, 498 U.S. 1068 (1991)).  However, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Id..  Compare Ball, 902 F.2d at 196 n.3 (noting that "after discovery," a Rule 12(b)(2) movant contesting the non-movant's factual allegations cannot be defeated merely by the prima facie showing, but is entitled to a hearing at which the non-movant must prove the existence of jurisdiction by a preponderance of the evidence)(emphasis added).

"A corporation's consent to jurisdiction under a forum selection clause can be applied to obtain jurisdiction over a [foreign defendant] by disregarding the corporate entity under the doctrine of piercing the corporate veil."  Packer v. TDI Systems, Inc., 959 F. Supp. 192, 201 (S.D.N.Y. 1997).  Under the doctrine of piercing the corporate veil, a plaintiff can allege a proper jurisdictional basis by claiming that a corporation, as to which

6

jurisdiction is proper pursuant to a forum selection clause, is
the alter ego of the foreign defendant.  See Network Enterprises,
Inc. v. APBA Offshore Productions, Inc., 2003 WL 124521, at * 1
(S.D.N.Y. Jan. 14, 2003); Angelo Tomasso, Inc. v. Armor Constr. &
Paving Inc., 187 Conn. 544, 552 (1982)("Courts will . . .
disregard the fiction of a separate legal entity to pierce the
shield of immunity afforded by the corporate structure in a
situation in which the corporate entity has been so controlled and
dominated that justice requires liability to be imposed on the
real actor.").  A plaintiff advancing an alter ego theory of
jurisdiction may proceed under the "Instrumentality Rule," by
alleging "(1) control, not mere majority or complete stock
control, but complete domination, not only of finances but of
policy and business practice in respect to the transaction
attacked so that the corporate entity as to this transaction had
at the time no separate mind, will or existence of its own; (2)
that such control must have been used by the defendant to commit
fraud or wrong, to perpetrate the violation of a statutory or
other positive legal duty, or a dishonest or unjust act in
contravention of plaintiff's legal rights; and (3) that the
aforesaid control must proximately cause the injury or unjust loss
complained of."  Zaist v. Olson, 154 Conn. 563, 575 (1967).
Alternatively, a plaintiff may proceed under the "Identity Rule"
by alleging that "there was such a unity of interest and ownership
that the independence of the corporation had in effect ceased or

7

had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation for the benefit of the whole enterprise." Bergesen d.y. v. Lindholm, 760 F.Supp. 976, 988 (D. Conn. 1991) (citing Zaist, 154 Conn. at 576).

   **B.  Discussion**

   Transfesa's motion to dismiss is properly viewed within the procedural framework set forth in Transport. There the court held that "[i]f the parties present conflicting affidavits," in the pre-discovery context, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." 989 F.2d at 580. At the time the instant motion was filed, the parties had not conducted discovery. Additionally, both parties have submitted affidavits in which they contest the existence of facts that would support this court's exercise of jurisdiction over Transfesa. Thus, if the plaintiff has made a prima facie showing that Transfesa is the alter ego of Navicon, under either the "Instrumentality Rule" or the "Identity Rule," it will have made the necessary showing to survive the Rule 12(b)(2) motion to dismiss.

   Carlisle has made the necessary prima facie showing that Transfesa was the alter ego of Navicon with respect to the

8

transaction at issue.  Carlisle argues that Transfesa "exercised
complete domination over Navicon's policy and business decisions"
with respect to the container leases in question and the
negotiations with Carlisle concerning Navicon's outstanding
obligations under the lease agreement.  (See Plaintiff's
Opposition, at 16-17.)  In support of this contention, Carlisle
points to a January 18, 2002 letter from Transfesa's President to
Carlisle which indicates that Transfesa was considering the
purchase of some of Navicon's equipment "to provide a solution for
[Navicon] to continue with the day to day business in a normal
way," and had "instructed Navicon to negotiate the different
alternatives with [Carlisle]."  (Klinge Aff. Ex. A.)  Carlisle
also contends that at a January 29, 2002 meeting between
representatives from Carlisle, Navicon and Transfesa, Transfesa
essentially conducted negotiations regarding the containers on
Navicon's behalf.  (Id. at ¶ 14.)  Also, Carlisle states that
Transfesa officials threatened to manipulate Navicon's insolvency
proceedings to Carlisle's detriment and to sell certain of
Navicon's ships so as to prevent Carlisle from asserting claims
against them. (See Klinge Aff. ¶¶ 16-17; Leach Aff. ¶¶ 4-5.)
Carlisle contends that the fact that Transfesa followed through on
these threats demonstrates its control of Navicon. (See Klinge
Aff. ¶ 17.)  Carlisle has thus made a prima facie showing that
Transfesa exercised complete domination of Navicon's policy and
business practice with respect to the transaction at issue, and

9

has therefore satisfied the first requirement under the
Instrumentality Rule.

Second, Carlisle argues that such control was used by
Transfesa to commit fraud or wrong, to perpetrate the violation of
a statutory or other positive legal duty, or a dishonest or unjust
act in contravention of Carlisle's legal rights.  In support of
this contention, Carlisle claims that Transfesa refused to
redeliver containers to which Carlisle was legally entitled under
the leases it had executed with Navicon.  (See Klinge Aff. ¶ 17.)
Additionally, Carlisle claims that Transfesa wrongfully
transferred ships from Navicon to another company, frustrating
Carlisle's exercise of its rights as a creditor of Navicon.  (Id.)
Carlisle has thus made a prima facie showing that Transfesa's
control of Navicon was used by Transfesa to commit fraud or wrong,
to perpetrate the violation of a statutory or other positive legal
duty, or a dishonest or unjust act in contravention of Carlisle's
legal rights, and has therefore satisfied the second requirement
under the Instrumentality Rule.

Third, Carlisle argues that the aforesaid control proximately
caused Carlisle's alleged injury or unjust loss. In support of
this contention, Carlisle claims that Transfesa was responsible
for Navicon's undercapitalization and resultant failure to meet
its obligations to Carlisle under the container leases.  (See
Leach Aff. ¶¶ 13, 23; Berreteaga de Sarachaga Aff. ¶ 11.)
Carlisle has thus made a prima facie showing that Transfesa's

control of Navicon proximately caused Carlisle's alleged injury or
unjust loss, and has therefore satisfied the third requirement
under the Instrumentality Rule.

Because the court concludes that Carlisle, pursuant to the
Instrumentality Rule, has made the requisite <u>prima facie</u> showing
that Transfesa was the alter ego of Navicon, it need not consider
Carlisle's argument that Transfesa is also subject to jurisdiction
as Navicon's alter ego under the Identity Rule.

Accordingly, Transfesa's motion to dismiss is being denied.

## III. NAVICON'S MOTION TO DISMISS OR STAY ON GROUNDS OF INTERNATIONAL COMITY

### A.    Legal Standard

Navicon's motion is a pre-answer motion seeking dismissal
based on the procedural ground of international comity.
Therefore, it is brought pursuant to Fed. R. Civ. P. 12(b)(6).
<u>See</u> <u>United Feature Syndicate, Inc. v. Newspaper Enterprises Ass'n,
Inc.</u>, 216 F.Supp.2d 198,209 (S.D.N.Y. 2002).  In applying Fed. R.
Civ. P. 12(b)(6), the court must accept as true all factual
allegations in the complaint and draw inferences from these
allegations in the light most favorable to the plaintiff.  <u>See</u>
<u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Thomas v. City of
N.Y.</u>, 143 F.3d 31, 37 (2d Cir. 1998).  Dismissal is warranted only
if, under any set of facts that the plaintiff can prove consistent
with the allegations, it is clear that no relief can be granted.
<u>See</u> <u>Tarshis v. Riese Org.</u>, 211 F.3d 30, 35 (2d  Cir. 2000); <u>Cooper</u>

11

v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Grant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

**B.  Discussion**

The United States Supreme Court has defined comity "in the legal sense, [a]s neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 163-64 (1895). Under this principle, U.S. courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries, see Pravin Banker Assocs., Ltd. v. Banco Popular del Peru, 109 F.3d 850, 854 (2d

12

Cir. 1997), so long as the foreign court had proper jurisdiction and enforcement does not prejudice the rights of U.S. citizens or violate domestic public policy.  See Victrix S. S. Co, S.A. v Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987).  Moreover, it was recognized that comity is particularly appropriate where the court is confronted with foreign bankruptcy proceedings.  Id. "American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." Cunard Steamship Co., Ltd. v. Salen Reefer Services A.B., 773 F.2d 452, 458 (2d Cir. 1985).

However, before the doctrine can be applied, the moving party must demonstrate the existence of a true conflict between U.S. law and that of a foreign jurisdiction.  See Hartford Fire Ins. Co. v. California, 509 U.S. 764, 768 (1993); Maxwell Comm. Corp. v. Societe Generale (In re Maxwell Communication Corp.), 93 F.3d 1036, 1049 (2d Cir. 1996).  Such a conflict arises only where it is not possible to comply with the substantive legal rules of both fora.  See In re Maxwell Communication Corp. 93 F.3d at 1050.

Here, Navicon has not shown that the application of U.S. law to adjudicate Carlisle's complaint will conflict with any provision of the Spanish Suspension of Payments law.  Navicon argues that the filing of the Insolvency Proceeding by Navicon and the filing of two other proceedings by Carlisle constitutes sufficient grounds for this court to defer to the Insolvency Proceeding.  Navicon also argues that it is clear that a Spanish

13

court has the most compelling interest in the orderly administration of the estate of a Spanish corporation which seeks relief under the bankruptcy laws of Spain, that recognizing a Spanish bankruptcy proceeding involving a private Spanish corporation will not have an adverse impact on the laws, policies or interests of the United States, and that the courts of the United States recognize the necessity of a unified approach in the administration of a corporation in bankruptcy, particularly where the corporation does business in several countries, as is the case here. However, there has been no showing of an actual conflict between American and Spanish law.

Carlisle has demonstrated that it is seeking damages in this action that are not recoverable in either the Insolvency Proceeding or in the two other proceedings commenced by it in Spain. Spanish law recognizes two separate insolvency procedures: Receivership ("suspension de pagos") and bankruptcy ("quiebra"). The Suspension of Payments law only addresses claims that existed prior to the filing of the Suspension of Payments Petition. Consequently, Court No. 34 permitted Carlisle to commence a separate action against Navicon. The provisions of the lease agreement between Navicon and Carlisle provided that this court is the appropriate forum for Carlisle to bring suit against Navicon.

Carlisle's U.S. action does not undermine the Insolvency Proceeding. First, Carlisle's principal claims being pursued in this court are outside the ambit of the Insolvency Proceeding.

14

During the period of receivership, Carlisle sustained damages by
virtue of the failure of Navicon to pay container hires.  Second,
should Carlisle obtain a judgment for all the alleged damages it
seeks in this action, that judgment cannot undermine the
Insolvency Proceeding because it will have to be enforced in Spain
pursuant to Spanish law.

    In Spain, Carlisle commenced two separate actions against
Navicon outside the Insolvency Proceeding.  In its first action,
Carlisle sought to compel Navicon to identify the location of
every container and to "exhibit" those containers.  In connection
with that action, the court presiding over the Insolvency
Proceeding rejected Navicon's argument that it had exclusive
jurisdiction.  In its second action, in which judgment has been
issued, Carlisle sought to recover possession of 101 of the 115
containers that Navicon allegedly refused to return and the
"fruits," i.e., profits, of Navicon's use of those containers.
The Court of First Instance No. 5 ordered Navicon to return the
containers, but denied without prejudice Carlisle's claim to the
profits Navicon had realized through its use of the containers.
The court also rejected Navicon's argument that it was barred from
adjudicating Carlisle's claim due to the ongoing Insolvency
Proceeding.

    Carlisle's pending action in this court is not contrary to
Spanish law, because Carlisle seeks in this action damages that
are not recoverable in either the Insolvency Proceeding or in two

15

separate actions commenced by Carlisle in Spain outside the Insolvency Proceeding. As the relief available to Carlisle in the two Spanish non-bankruptcy actions are only "exhibition" and the return of the containers to Carlisle, which relief is not sought in this action, Spanish law does not prevent Carlisle from proceeding concurrently in different countries to protect its interests so long as there is no double recovery.

Navicon apparently has no assets in the United States, and for this reason Carlisle will ultimately have to use the courts of Spain to enforce any judgment entered by this court. This court has no reason to conclude it is likely that the courts of Spain will allow any violation of the so-called "pars conditio creditorum" (i.e., the equal treatment that has to be given to all the creditors in an insolvency proceeding) invoked by Navicon. Therefore, by adjudicating this case, this court will not interfere with the orderly and equitable distribution of Navicon's estate, much less dismember it, as posited by Navicon.

This court has concurrent jurisdiction to adjudicate Carlisle's claims by virtue of the forum selection clause contained in the lease agreement signed by Carlisle and Navicon, and giving effect to it does not offend principles of international comity. See United Feature Syndicate Inc. v. Miller Features Syndicate, Inc., 216 F.Supp.2d 198, 210 (S.D.N.Y. 2002) (citing China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987) ("As a general matter, concurrent jurisdiction

in two courts does not necessarily result in a conflict.").

Accordingly, Navicon's motion to dismiss or stay is being denied.

## IV.    CONCLUSION

Defendant Transfesa's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 9) is hereby DENIED, and Defendant Navicon, S.A.'s Motion to Dismiss the Complaint, or, in the Alternative, to Stay this Action as Against Navicon, S.A. (Doc. No. 6), is hereby DENIED.

It is so ordered.

Dated this 31st day of March 2006 at Hartford, Connecticut.

_____/s/_____
            Alvin W. Thompson
      United States District Judge
